## In re RIKER.

(Circuit Court of Appeals, Second Circuit. May 8, 1901.)

No. 159.

BANKRUPTCY—ORDER RELATING TO SUIT IN STATE COURT—VOLUNTARY SUBMISSION TO JURISDICTION.

Where the defendant, in a suit in a state court by creditors to set aside a conveyance as fraudulent, in which the trustee in bankruptcy of the grantor was afterwards substituted as plaintiff, voluntarily appeared in the bankruptcy court, and applied for and obtained an order assenting to the sale of the property, and the deposit of the proceeds to await the judgment of the state court, he is bound by such order, although the court had no jurisdiction in the premises except by his consent, and cannot complain that the court refuses to modify it on his application so as to permit him to receive the money before judgment has been rendered by the state court.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of New York, in Bankruptcy.

This cause comes here upon a petition of William B. Riker, the father of the bankrupt, to review an order made by the district judge, Southern district of New York, denying motion to vacate an ex parte injunction order, granted March 7, 1901, upon the application of the trustee in bankruptcy. 107 Fed. 96.

T. D. Adams, for petitioner.

Herbert E. Rogers, opposed.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. On September 4, 1900, William H. Riker filed his petition to be and was adjudged a bankrupt. On October 25, 1900, Peter Alexander was appointed trustee. Prior to the inception of the bankruptcy proceedings, suits were brought in the state court to set aside as fraudulent a transfer of personal property, consisting of moneys, checks, and notes made by the bankrupt to his father, William B. Riker, in the month of February, 1892. It was asserted on the argument, and not denied, that this transfer has on more than one occasion been held fraudulent by the courts. It was asserted by the creditors that part of the proceeds of this transfer were invested in two parcels of real estate then standing in the father's name, and on August 29, 1900, suit was brought, the father being made a defendant, to impress a lien to the amount of such investment against No. 353 Sixth avenue and No. 122 West Seventy-Fourth street, and a lis pendens was filed against said real estate. The complaint in that suit contained sufficient averments touching the Sixth avenue property, but its averments were insufficient to warrant lis pendens against the Seventy-Fourth street property.

Application was therefore made to the state court to cancel the lis pendens. The judge at first instance (Gildersleeve) thought the complaint sufficient, and denied the motion. Appeal was taken, and his decision reversed, and an amended complaint was subsequently served, apparently containing sufficient averments. This state court suit is at issue, but not yet tried. While the appeal above referred to was pending the trustee in bankruptcy was substituted as plaintiff, October 25, 1900. At the time the suit was begun there was pending a sale of the Seventy-Fourth street property under a contract in writing. The sale presumably was an advantageous one for the owner, and, therefore, although denying the motion to cancel lis pendens, Justice Gildersleeve (September 10, 1900) made an order allowing the sale to be completed upon there being deposited out of the proceeds of such sale, with the Title Guarantee & Trust Company, the amount remaining after paying off mortgages, expenses, etc. (about $3,900); "which sum * * * should be paid out only after judgment had been rendered in the action, and as such judgment should direct, after the service on said trust company of a certified copy of said judgment, or upon and as directed by the further order of the court in the premises." When an attempt was made, however, to carry out the contract of sale, the trust company, which was examining the title on behalf of the purchaser, refused to accept or pass said title, except upon an order of the United States district court assenting to the order so made by Justice Gildersleeve. This objection seems to be hypercritical. The district court had no jurisdiction of the pending suit, nor of William B. Riker, the father, and it is difficult to see upon what theory it was supposed that it could, without his consent, have assumed jurisdiction of either a plenary suit or summary proceedings to declare void a transfer to a person not a party to the bankruptcy proceedings, and to impress a lien upon real estate owned by him. Instead of insisting upon his rights under the contract of sale, and making some proper application to require the purchaser to carry out its terms, William B. Riker voluntarily appeared in the United States district court, September 17, 1900, and, upon petition reciting the facts, prayed that court to make an order providing, as did Judge Gildersleeve's, for deposit in the trust company, "to be paid out by said company only upon and as directed by the judgment entered in said action [i. e. in the state court], and after service of a certified copy of such judgment upon said trust company, or the further order of this court [i. e. the U. S. district court] in the premises." The subject-matter of the controversy being thus brought to the attention of the court, it naturally provided for the opportunity of independent investigation before final disposition, and directed that the money be paid out "only after and as directed by the judgment to be entered in said action after service of a certified copy thereof upon said company, and assented to by the further order of this court in the premises, upon and after like service of a certified copy of such order upon it." After the entry of these orders the sale was carried out, and some $3,900 of the proceeds deposited in the trust company. No judgment has been entered in the action in the state court, but subsequent to the reversal of Justice Gildersleeve's decision an order

was made in the state court directing the payment of this deposit to William B. Riker. Various applications have since been made to Judge Brown praying for such modification of his order of September 17, 1900, as would permit William B. Riker to receive such deposit, all have been refused, and it is to review the last order (April 5, 1901), denying such relief, that petitioner now applies to this court.

The order of the district court is criticised because it apparently reserves to that court the right to revise or reverse the judgment of the state court. No doubt its language is broad enough to warrant such construction, but it is also susceptible of a more restricted meaning, viz. providing for an opportunity to scrutinize the certified copy of judgment before assenting to the payment. The state court has jurisdiction of the subject-matter and of the parties. The trustee in bankruptcy went into that court by instructions of the district court. It must be assumed that, when the state court shall have rendered judgment in such action, the district court will accept such judgment as final. But no such question is now presented. There has been no judgment entered in the state court suit. The question what should be done with the fund in the trust company prior to judgment was submitted independently to both courts, and each took such action as it saw fit to conserve the same. Indeed, the petitioner himself asked the district court to direct the trust company to hold it until "further order of said court." There can be no doubt as to the jurisdiction of that court in the premises, when petitioner has voluntarily appeared and asked it to take action. And there seems to be no good reason why the proceeds of the sale should not remain in the trust company until judgment in the action. The petition to review is denied.